UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TIMOTHY FERGUSON,                )
                                 )  No. CV-05-0111-MWL
           Plaintiff,            )
                                 )  ORDER GRANTING DEFENDANT'S
v.                               )  MOTION FOR SUMMARY JUDGMENT
                                 )
JO ANNE B. BARNHART,             )
Commissioner of Social           )
Security,                        )
                                 )
           Defendant.            )
_____)

    BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on January 17, 2006. (Ct.
Rec. 9, 12).  Plaintiff Timothy Ferguson ("Plaintiff") filed a
reply brief on December 1, 2005.  (Ct. Rec. 14).  Attorney Maureen
Rosette represents Plaintiff; Special Assistant United States
Attorney Richard A. Morris represents the Commissioner of Social
Security ("Commissioner").  The parties have consented to proceed
before a magistrate judge.  (Ct. Rec. 3).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 12)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 9).
///

**JURISDICTION**

On May 29, 2001, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability since May 1, 1994, due to major depression, intrusive thoughts, nightmares, decreased ability to concentrate and memory impairments. (Administrative Record ("AR") 100-102, 119). The application was denied initially and on reconsideration.

On September 4, 2002, Plaintiff appeared before Administrative Law Judge Mary B. Reed ("ALJ"), at which time testimony was taken from Plaintiff, Plaintiff's wife (Susan Ferguson), medical expert Allen D. Bostwick, Ph.D., and vocational expert Thomas L. Moreland. (AR 397-447).

On September 28, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 18-33). The Appeals Council denied a request for review on February 25, 2005. (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 19, 2005. (Ct. Rec. 1).

Plaintiff's disability insurance lapsed on December 31, 1999. (AR 18). Because a claimant must establish disability prior to the date last insured, *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999), the relevant time period in this case is from May 1, 1994 (the alleged onset date) to December 31, 1999 (the date Plaintiff was last insured). Plaintiff must demonstrate that, before his date last insured, he had a disability which was expected to result in death or which lasted or could be expected

1  to last for a continuous period of not less than twelve months.

2  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

3  **STATEMENT OF FACTS**

4      The facts have been presented in the administrative hearing

5  transcript, the ALJ's decision, and Plaintiff's brief and will

6  only be summarized here.  Plaintiff was 55 years old on the date

7  he was last insured.  (AR 18).

8      Plaintiff testified at the administrative hearing that he was

9  currently attending treatment, weekly, at the VA medical center.

10  (AR 401).  He indicated that he went to the VA for treatment for

11  about five years in the early 1980's but then ceased going until

12  1996.  (AR 408).  He stated that he currently attends monthly

13  doctor's appointments in addition to his VA sessions.  (AR 403).

14      Plaintiff testified that he tends to stay at home (AR 402),

15  but that he does goes out to eat at a restaurant about once a

16  month (AR 403).  He indicated that he has difficulty with sleep,

17  frequent nightmares, flashbacks of the war in Vietnam maybe once a

18  year, and constant intrusive thoughts.  (AR 402-404, 407).  To

19  refocus on things other than has combat experiences and intrusive

20  thoughts, Plaintiff stated that he liked to paint and do other

21  artwork or constructive things.  (AR 404, 412-413).  He indicated

22  that approximately three or four years prior to the administrative

23  hearing, he would paint constantly, spending six to eight hours a

24  day doing artwork.  (AR 404).  However, Plaintiff stated that his

25  symptoms had gotten worse when his wife got cancer and his time

26  spent on artwork had tapered off.  (AR 404-405).  He has

27  apparently attempted to sell his artwork with not much luck.  (AR

28  412).

1    Plaintiff testified that his energy level was "terrible," and

2    that he would sleep or nap, one to three hours at a time,

3    periodically throughout the day.  (AR 405).  He indicated that he

4    isolates himself, having only one friend who visited him once a

5    year.  (AR 406).  He does not like to drive and, when traveling

6    together, he preferred his wife to do the driving.  (AR 406).  He

7    did state that he sometimes travels with his wife to Southern

8    California and to Las Vegas and had traveled by RV for a three

9    week trip to the Oregon coast in October of 1999.  (AR 412)

10   Plaintiff testified that he stopped working in 1994, opting

11   for a partial retirement.  (AR 409).  He stated that he could not

12   handle that job anymore and it was just best for him to take the

13   early retirement opportunity at that time.  (AR 409).  However,

14   Plaintiff did agree that, although he felt he could not handle

15   working anymore, he was not seeking medical treatment at that

16   time.  (AR 409).

17   Plaintiff testified that he was a 1972 graduate from Eastern

18   Washington University with a degree in industrial technology.  (AR

19   421-422).  His first job following college was work for the city

20   of Spokane in traffic engineering and street design.  (AR 422).

21   He worked in traffic engineering until he retired in 1994.  (AR

22   422).  He indicated that the reason he stopped working was because

23   he had an opportunity for an early partial retirement.  (AR 423).

24   Although he was not actually threatening people or having a

25   difficult time getting along with other employees, he stated he

26   was having suicidal depression and thoughts of homicidal rage at

27   the time of his retirement.  (AR 423).

28   ///

Plaintiff testified that he restarted VA sessions in 1996 following his wife being diagnosed with cancer. (AR 424-425). His wife's situation triggered flashbacks and intrusive thoughts, and he went to the VA to attempt to get past those symptoms. (AR 424-425).

Plaintiff described his physical impairments as arthritis in his hands, joints, hips and spine and arm and leg numbness resulting from pinched nerves. (AR 425-426). He stated that he had an MRI taken of his spine in 1994, but the doctor did not recommend an operation at that time. (AR 426). He indicated that he was prescribed medication, Vioxx, by his family doctor for the pain stemming from his arthritis. (AR 427). However, Plaintiff stated that if he does not perform strenuous work, his arthritis is not irritated. (AR 428).

Plaintiff testified that he had just painted his house the weekend prior to the administrative hearing and that this activity caused him to be in a lot of pain. (AR 427). He stated that the pain was likely to remain for about a month. (AR 427). The activity had also caused numbness in his left hand and arm. (AR 428).

Plaintiff indicated he also has problems with his heart. (AR 429). He stated he has high blood pressure and heart palpitations, as well as a condition where his heart skips a beat. (AR 429). However, Plaintiff stated that he has not had heart problems over the years, but that the condition had been getting worse more recently. (AR 430). He indicated that the blood pressure medication controls the symptoms related to his heart problems. (AR 430).

Plaintiff stated that he constantly has problems with his short-term memory, and that his concentration was not good.  (AR 431-432).  However, Plaintiff testified that he has no difficulty with reading books and spends three or four hours a day reading. (AR 432).

Plaintiff testified that he has no problems with taking care of his personal needs, like getting dressed or taking a shower, and could do some housework, including vacuuming.  (AR 433-434). He is also capable of mowing his lawn with a riding lawnmower. (AR 435).  He indicated that he gets about 12 hours of sleep each night and may take naps during the day lasting up to three hours. (AR 435).

Plaintiff stated that he does not have problems with sitting in place and was able to sit for a couple of hours at a time.  (AR 436).  He indicated he could stand for only 15 minutes at a time because his hip joints and back start to irritate him.  (AR 436). He stated he could walk a maximum of two miles, but would suffer afterwards.  (AR 436).  He testified he could lift no more than 30 pounds at a time, he was able to bend over and pick items up off the floor, and that squatting and climbing stairs aggravated his knees.  (AR 437).  Plaintiff indicated that he drinks about three ounces of hard alcohol a day, but drank a lot more in the past, and last smoked marijuana five or six years prior to the administrative hearing.  (AR 410-411).

Plaintiff's wife, Susan Ferguson, Medical expert Allen D. Bostwick, Ph.D., and vocational expert Tom L. Moreland also testified at the administrative hearing held on September 4, 2002. (AR 397-447).

### **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which

Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

///

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (AR 19). At step two, the ALJ found that Plaintiff did not have a severe mental impairment meeting the 12 month durational requirements of the regulations prior to Plaintiff's date last insured. (AR 27). The ALJ did find that, prior to his date last insured, Plaintiff had mild degenerative disc disease of the lumbar and cervical spine and was overweight, impairments which are severe, but not severe enough to meet or medically equal, singly or in combination, one of the Listings impairments. (AR 27).

///

The ALJ concluded that Plaintiff has the RFC to perform a full range of medium exertion work. (AR 31). The ALJ found that Plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, sit intermittently and stand/walk for six hours in an eight hour workday and have good use of the arms and hands for grasping, holding and turning objects. (AR 31, n. 1).

At step four of the sequential evaluation process, the ALJ found that Plaintiff's past relevant work as a traffic transportation engineer was skilled, light work which Plaintiff previously performed at the sedentary level of exertion. (AR 31). Therefore, based on Plaintiff's RFC, the ALJ determined that Plaintiff could perform his past relevant work as he previously performed it or as it is generally performed in the national economy. (AR 31). Accordingly, the ALJ determined, at step four of the sequential evaluation process, that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 31-33).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, he argues that:

1.   The ALJ erred by giving more weight to the opinion of the medical expert, Dr. Bostwick, than to the opinions of other medical professionals of record;

2.   The ALJ erred by finding that Plaintiff did not have a severe mental impairment during the relevant time period; and

3.   The ALJ erred by failing to provide persuasive, valid reasons for giving less weight to the VA disability rating.

///

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Medical Professional Opinions**

Plaintiff contends that the ALJ erred by giving greater weight to the opinions of Dr. Bostwick, the medical expert, than to the opinions of other physicians of record. (Ct. Rec. 10, pp. 10-17). The Commissioner responds that, the ALJ properly relied on the testimony of the medical expert to find that Plaintiff did not have a severe mental impairment prior to Plaintiff's date last insured. (Ct. Rec. 13, pp. 9-16).

In a disability proceeding, the courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his familiarity with Plaintiff and Plaintiff's physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted). To reject the treating physician's opinion, the ALJ must state specific, legitimate reasons that are supported by

substantial evidence.  *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. Historically, the courts of the Ninth Circuit have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports that are based substantially on Plaintiff's subjective complaints of pain, as specific legitimate reasons for disregarding the treating physician's opinion.  *Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

On December 17, 1996, James Bailey, Ph.D., examined Plaintiff.  (AR 162-165).  Dr. Bailey indicated that Plaintiff reported he could have stayed at work in 1994, but the work schedule slowed down.  (AR 162-163).  It was noted that Plaintiff was taking no psychiatric medications and was not attending counseling at the time of the examination.  (AR 163).  Plaintiff complained to Dr. Bailey of nightmares, constant intrusive thoughts, thoughts of Vietnam, difficulty with sleep, and chronic anger about his job with the city.  (AR 163).  Two suicide attempts were noted, the latest occurring in 1984.  (AR 164).  Dr. Bailey diagnosed PTSD, chronic, delayed, but found no psychiatric disorder.  (AR 164).  Dr. Bailey gave Plaintiff a Global Assessment of Functioning ("GAF") score of 55.[1]  (AR 165).

Almost three years later, on September 22, 1999, Ken Cogswell, Ph.D., examined Plaintiff.  (AR 166-169).  Dr. Cogswell noted that Plaintiff's wife had been diagnosed with ovarian cancer

---

[1] A GAF of 51 to 60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks), OR moderate difficulty in social, occupational, or school function (e.g. few friends, conflicts with peers or co-workers).  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

- 13 -

about one year prior to the examination and that she subsequently had undergone two surgeries and two rounds of chemotherapy.  (AR 166).  The experience had been extremely stressful for Plaintiff, and, consequently, he reportedly had experienced increased symptoms of PTSD.  (AR 166).  Plaintiff indicated that the frequent trips and stays at the hospital, as well as having to change his wife's dressings, had brought back memories of the time he spent on a ship in Vietnam where many wounded were receiving treatment.  (AR 166).  Plaintiff reported that he had been prescribed antidepressant medications which he believed to improve his mood and reduce his excessive amount of sleep.  (AR 166-167).  He indicated that he tries to stay busy doing yard work and other household duties as well as reading.  (AR 167).  Prior to his wife's illness, he would do artwork six to eight hours a day and was hoping to return to this routine as his depression improved.  (AR 167).  Dr. Cogswell found that Plaintiff's PTSD symptoms appeared to have increased in severity over the past year, secondary to his wife's diagnosis of cancer, but noted that it was unclear how long the increase in severity would last.  (AR 168).  He diagnosed Plaintiff with PTSD, moderately severe, major depression, chronic arthritis, hypertension and some cardiac arrhythmia and gave Plaintiff a GAF score of 52.  (AR 168).

The VA increased Plaintiff's disability rating from 30% to 50%, effective August 23, 1999, based on Dr. Cogswell's report and treatment records from the VA medical center dated 1996 to 1999.  (AR 338).  The VA rating report concluded that a higher percentage was not warranted because there was "no evidence of deficiencies ///

in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as:  suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control . . .; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances . . .; inability to establish and maintain effective relationships."  (AR 339-340).

On September 15, 2000, Plaintiff was examined by David Griffen, Ph.D.  (AR 170-172).  Dr. Griffen noted that the examination would focus on Plaintiff's symptomology and functioning since September of 1999.  (AR 170).  Plaintiff reported that he was able to work up to six hours at a time on an art project and that such activity helped his PTSD symptoms.  (AR 171).  Plaintiff indicated that some of his PTSD symptoms were marginally improved now that his wife was no longer in active treatment in the hospital setting, but that his depression was worse and chronic.  (AR 171).  Dr. Griffen found Plaintiff's overall presentation suggestive of a depressed individual who has little hope and nothing to look forward to.  (AR 172).  He concluded that most of Plaintiff's PTSD symptoms had remained essentially the same since his last exam.  (AR 172).  Plaintiff was diagnosed with PTSD, major depression, chronic arthritis, hypertension, cardiac arrhythmia, and lung cancer diagnosis and given a GAF score of 51.  (AR 172).
///

On May 15, 2001, the VA increased Plaintiff's disability rating from 50% to 100%, effective August 23, 1999, based on Dr. Griffin's report, Mr. Grieb's statement, and treatment records from the VA medical center dated August 1999 to May 2000.  (AR 341).  The VA concluded that the evidence established that Plaintiff's PTSD and depression are so severe that "he is now unemployable."  (AR 343).  The VA assigned the 100% disability retroactively to the date the claim was filed, August 23, 1999.  (AR 343).

Plaintiff argues that a February 22, 2001 statement from Thomas Grieb, a counselor at the VA Center, supports a finding that Plaintiff suffered from severe mental impairments during the relevant time period.  (Ct. Rec. 10, p. 14).  Mr. Grieb indicated that Plaintiff was no longer able to work due to PTSD symptoms and that he was severely depressed and suicidal in August of 1999.  (AR 342).  Mr. Grieb noted that Plaintiff was no longer able to establish or maintain meaningful relationships and has an overwhelming sense of depression and near panic which prevents him from managing his life in a meaningful way.  (AR. 342-343).  Mr. Grieb concluded that Plaintiff has been unable to work since 1994 due to his PTSD symptoms.  (AR 343).

While Mr. Grieb's opinion indicates that Plaintiff has been unable to work since 1994 due to his PTSD symptoms (AR 343), Mr. Grieb is neither a physician nor a licensed or certified psychologist.  Therefore, the counselor's opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security regulations.  20 C.F.R. §§ 404.1513, 416.913.  Moreover, as noted by the Commissioner, while

the ALJ did not specifically address Mr. Grieb's statement, the actual statement cited by Plaintiff does not appear in the file and is only referenced as a third-person summary in the VA Rating Determination.  (Ct. Rec. 13, p. 17; AR 342-343).  Furthermore, there is no evidence supporting Mr. Grieb's rationale for finding that Plaintiff was totally disabled since 1994.  As indicated by the ALJ, there are no treatment or counseling notes from the claimant's alleged onset date up until May 1996, approximately two years after he stopped working; therefore, there are no contemporaneous records upon which the VA could base an opinion as to the nature and severity of any mental impairment prior to that time.  (AR 29-30).  The ALJ also noted that while Plaintiff was found 100% disabled by the VA retroactive to August 1999, when he was seen by the VA for an impairment rating in September of 1999 the rating was for only 50%.  (AR 30).  The VA failed to demonstrate rationale for the retroactive increase in rating as the records they relied upon were essentially the same as previously relied upon.  In addition, Plaintiff reported that, at the end of September 1999, he went on an enjoyable three week RV vacation to the Oregon coast, in February 2000 Plaintiff reported he was going on a four week trip to Arizona to attend auto races, and throughout the summer of 2000 he was noted to be doing well, keeping busy with sculpting and wood carving, painting and reading.  (AR 29).  In light of the evidence of record to the contrary and the lack of objective support for Mr. Grieb's statement, the undersigned agrees with the Commissioner that the statement of counselor Grieb is unpersuasive.

///

The record also contains findings from state agency reviewing medical professionals. On August 8, 2001, Sean Mee, Ph.D., indicated that there was insufficient evidence to make a decision prior to December 1999. (AR 239-250). On September 26, 2001, Deborah Baldwin, Ph.D., filled out forms indicating that Plaintiff had an affective disorder and an anxiety disorder that caused mild restrictions of activities of daily living, mild difficulties in maintaining concentration, persistence or pace, moderate difficulties in maintaining social functioning and no repeated episodes of decompensation. (AR 252-269). Dr. Baldwin did not opine that Plaintiff was unemployable and stated, in fact, that Plaintiff does not evidence any real difficulty with understanding and memory just probable difficulty with complex instructions during periods of increased distress. (AR 254). Dr. Baldwin noted, however, that Plaintiff seems able to carry out even detailed instructions and evidences no difficulty with adaptability. (AR 254).

At the September 4, 2002 administrative hearing, Allen D. Bostwick, Ph.D., testified as a medical expert. (AR 413-419). Dr. Bostwick noted that, prior to his wife's cancer diagnosis in 1999, Plaintiff seemed to be doing relatively well. (AR 414). He opined that, between 1994 and 1999, it did not appear that Plaintiff had any severe mental illness. (AR 415). Dr. Bostwick indicated that the record reflects a 1996 assessment of limited PTSD symptoms and then relatively non-existent treatment up to 1999. (AR 415-416). He further indicated that much of

///

///

Plaintiff's treatment has been for depressive symptoms, but it is unclear what functional limitations are associated with his conditions. (AR 418-419).

On October 10, 2003, Dr. Bostwick completed interrogatories regarding his previous testimony. (AR 389-392). Dr. Bostwick summarized the record which he found displayed no severe psychological condition between May 1, 1994 and August 1, 1999. (AR 391). He indicated that Plaintiff did not receive specialized treatment for depression and has never been psychiatrically hospitalized. (AR 391). Dr. Bostwick opined that there is no compelling evidence that Plaintiff's depression exceeded a level of severity that would be expected as a normal response to his wife's potentially life-threatening medical condition. (AR 391). Dr. Bostwick further opined that Plaintiff's psychological diagnoses of record are based on Plaintiff's subjective report of symptoms and there is reason to question his credibility. (AR 391). Dr. Bostwick concluded that there is "absolutely no assessment of record documenting limitations in cognitive abilities, pace and persistence, [activities of daily living], and changes in his usual and customary level of social functioning, either between 05/01/1994 and 12/31/99, or subsequently." (AR 392).

The ALJ relied on the opinions of Dr. Bostwick to find that Plaintiff did not suffer from a severe mental impairment meeting the 12 month durational requirements of the regulations prior to Plaintiff's date last insured. (AR 27). Dr. Bostwick's persuasive testimony revealed that Plaintiff was experiencing ///

situational depression in response to his wife's cancer and that, following her treatment, Plaintiff was doing better and was able to engage in a wide range of activities and vacations in the latter part of 1999 and into 2000.  (AR 27).

As pointed out by the Commissioner, it is significant that the ALJ determined that Plaintiff was not credible (AR 28-29), and Plaintiff does not contest the ALJ's negative credibility finding (Ct. Rec. 10).  The ALJ noted, in accordance with Dr. Bostwick's findings (AR 26), that Plaintiff's psychological diagnoses of record were based on Plaintiff's subjective reports of symptoms. Since Plaintiff was found not credible, his statements concerning his pain, symptoms and limitations are not persuasive.  (AR 29). Accordingly, the medical opinions based on Plaintiff's subjective complaints are entitled to less weight. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff).

The undersigned concurs with the ALJ's rationale for according Dr. Bostwick's opinions weight and finds that the ALJ appropriately relied upon Dr. Bostwick's opinions in making her conclusions in this case.  The Court further finds that the ALJ provided specific and legitimate reasons for rejecting the findings of Dr. Baldwin and not according greater weight to the findings of Drs. Bailey, Cogswell and Griffin.  Accordingly, the ALJ did not err, as alleged by Plaintiff, by relying on the testimony of the medical expert in this case.

///

///

**B.  Severe Mental Impairment**

     Plaintiff contends that the ALJ erred by concluding that he did not have a severe mental impairment during the relevant time period.  (Ct. Rec. 10, pp. 9-17).  Plaintiff asserts that he provided ample evidence, consisting of signs, symptoms and laboratory findings, proving the existence of a severe mental impairment prior to the date he was last insured (December 31, 1999).  (Ct. Rec. 10, p. 11).  The Commissioner responds that the testimony of the medical expert and the weight of the credible evidence of record provides substantial evidence to support the ALJ's finding that Plaintiff did not have a severe mental impairment during the relevant time period.  (Ct. Rec. 13, pp. 8-16).  The undersigned agrees.

     The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities.  An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521, 416.921.  Plaintiff has the burden of proving that he has a severe impairment.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912.  In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that he is disabled.  20 C.F.R. § 416.912(a).  In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process.  SSR 96-4p.

///

///

The ALJ evaluated the evidence of record, considered the hearing testimony, and concluded that Plaintiff suffered from no severe medically determinable mental impairments prior to the date he was last insured. (AR 27). The ALJ specifically found that Plaintiff experienced situational depression in response to his wife's cancer but that, within a few months, he had improved. (AR 27). In support for her finding that Plaintiff did not have a severe mental impairment during the relevant time period, the ALJ noted the scarcity of medical treatment sought by Plaintiff between 1996 and 1999, the fact that Plaintiff traveled for vacations which he reportedly enjoyed in 1999, and the report by Plaintiff that he could have stayed at work in 1994 but the work schedule had slowed down. (AR 28-29). Furthermore, as noted in Section A, above, the ALJ did not err by according weight to the opinions of Dr. Bostwick. *Supra.* Dr. Bostwick's testimony and the record as a whole supports the ALJ's finding that Plaintiff did not have a severe mental impairments during the relevant time period in this case. Therefore, Plaintiff did not meet his burden at step two of the sequential evaluation process to establish the existence of a severe mental impairment during the relevant time period. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912. Accordingly, the ALJ's determination at step two is without error.

Although Plaintiff's condition may have worsened over time, Plaintiff has failed to establish that he suffered from a severe mental impairment, or was otherwise disabled, on or before the expiration of his insured status, December 31, 1999. The weight

///

///

of the record evidence supports the ALJ's finding that Plaintiff had no severe mental impairments during the relevant time period in this case, May 1, 1994 to December 31, 1999.

**C.  VA Disability Ratings**

Plaintiff also argues that the ALJ failed to provide persuasive, valid reasons for giving less weight to the VA disability determination in this case.  (Ct. Rec. 10, p. 17).

Although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's findings in reaching her decision. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Because of the marked similarity between the two federal disability programs, the ALJ must give great weight to a VA determination of disability.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  However, while an ALJ must ordinarily give great weight to the VA rating, the VA and SSA criteria are not identical, and the ALJ may give less weight to the VA rating if she gives persuasive, specific, valid reasons that are supported by the record.  *McCarty*, 298 F.3d at 1076.

The ALJ cited the *McCarty* case and discussed her rationale for limiting the weight given to the VA disability ratings as follows:

> It is noted that the claimant had been receiving some limited impairment rating since the early 1980's although he was gainfully employed in a skilled occupation up through 1994. It is further noted that there are no treatment or counseling notes from the claimant's alleged onset date up until May 1996, approximately two years after he stopped working. Therefore, there are no contemporaneous records upon which the VA could base an opinion as to the nature and severity of any mental impairment prior to that time.  When he was seen at the VA in May 1996 it was for the sole purpose to increase

///

> his rating . . . .  He did not desire counseling and his file
> was closed . . . .  He did not return until August 1999 again
> seeking to increase his rating because he was depressed over
> his wife's cancer.

(AR 29-30).

The ALJ noted that the record does not contain mental status evaluations completed during the relevant time period and found that there were also no objective assessments.  (AR 30).  The VA determinations were based on self-reported difficulties and, as noted above, the ALJ found Plaintiff not credible, a finding that is not contested by Plaintiff.  Finally, the ALJ indicated that the records relied upon by the VA for the 100% rating were effectively the same as those previously relied upon for a lower rating, yet this fact was not explained in the VA determination. (AR 30).

The undersigned finds that the ALJ provided persuasive, specific, valid reasons, that are supported by the record, for limiting the weight given to the VA disability determinations. Accordingly, the ALJ was entitled to give less weight to the VA ratings in this case.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is capable of performing a full range of medium exertion work, including his past relevant work as a traffic transportation engineer as he previously performed it or as it is generally performed in the national economy, is supported by substantial evidence and free of

///

///

///

legal error.  Plaintiff is thus not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 9**) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 12**) is **GRANTED**.

3.    The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

**DATED** this ____3rd____ day of April, 2006.

_____s/Michael W. Leavitt_____
MICHAEL W. LEAVITT
UNITED STATES MAGISTRATE JUDGE